# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA J. FELLOWS, | ) |
| Plaintiff, | ) |
| | ) 2:16-cv-00718-TFM |
| v. | ) |
| CAREER SYSTEMS DEVELOPMENT CORPORATION d/b/a PITTSBURGH JOB CORPS CENTER, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF No. 6) filed by Career Systems Development Corporation d/b/a Pittsburgh Job Corps. Center ("CSD"), along with a brief in support (ECF No. 7). Plaintiff Barbara J. Fellows has filed a brief in opposition (ECF No. 9), and CSD has filed a reply brief (ECF No. 10). Accordingly, the motion is ripe for disposition.

### I. Background

The following background is drawn from the Complaint, and the factual allegations therein are accepted as true for the purpose of this Memorandum Opinion. As the law requires, all disputed facts and inferences are resolved in favor of Plaintiff, the non-moving party.

### A. Factual Background

CSD operates an education and career technical program administered by the U.S. Department of Labor. CSD is a U.S. government contractor that receives more than one-million dollars in federal financial assistance each year.

Fellows was employed by CSD as a GED Math Instructor from October 13, 2013 to March 4, 2014. As part of her employment with CSD, Fellows signed an arbitration agreement (the "Arbitration Agreement") and an acknowledgment thereof (the "Acknowledgment") on October 15, 2013. The Arbitration Agreement does not require the employee to "relinquish [his/her] right to utilize administrative agencies such as the Equal Employment Opportunity Commission ("EEOC") or equivalent state agencies." Def.'s Ex. A at 7, ECF No. 7-1. It does, however, provide that "after review by the EEOC or state agency is completed, the Employee must exhaust the arbitration procedure contained in th[e] Agreement." *Id.*

In December 2013, a male student sexually assaulted Fellows in a restroom on CSD's premises. Fellows reported the sexual assault in January 2014, pursuant to the company's Safety/Workplace Security and Ombudsman Policies. Other teachers had previously reported being fearful of the student who committed the sexual assault or found him to be dangerous. Following Fellows' report of the sexual assault, CSD repainted the restroom and repaired the bathroom stall door, which Fellows reported the assailant to have broken.

On February 10, 2014, a Pittsburgh police officer visited CSD's premises and took a police report. CSD required Fellows to write a statement about the sexual assault and refused to allow her to have a lawyer present. Over the course of the investigation, CSD's employees continued to deny her access to a lawyer, while harassing and berating her.

Around this time, Fellows requested accommodations from CSD due to her diabetes, and to treat the injuries she sustained from the sexual assault, including trauma counseling. On February 12, 2014, Fellows faxed CSD a note from her doctor indicating that she needed regular meal and snack times, as well as breaks to check her insulin levels. On February 18, 2014, Fellows sent CSD an "Accommodation Interactive Process Form," requesting accommodations

2

for her diabetes and time-off to schedule appointments with detectives, police, medical professionals, Pittsburgh Action Against Rape, and the Center for Victims of Violent Crime.

On February 21, 2014, CSD submitted a "Response to Accommodation Interactive Process," in which it agreed to provide three daily breaks for Fellows to eat and manage her diabetes, as well as an agreement to work with Fellows to schedule her required appointments. Despite its response, CSD never gave Fellows the three daily breaks, nor did it work with her to schedule the required appointments. CSD also refused to provide Fellows time-off to seek professional help related to the sexual assault.

On March 4, 2014, the Pittsburgh Police completed its investigation of the sexual assault, and concluded that there was insufficient evidence to charge the perpetrator. That same day, Human Resources asked Fellows to meet with the police in the Human Resources department. The detectives informed Fellows that the police would reopen the investigation if new evidence surfaced.

Immediately following the conclusion of the police investigation, CSD terminated Fellows for allegedly falsifying documentation related to her report of the sexual assault. According to Fellows, she never falsified any documentation nor verbally conveyed false information to CSD regarding her assault. CSD replaced Fellows with a non-disabled male.

### B. Procedural History

On November 4, 2014, Fellows filed a Charge of Discrimination with the EEOC and cross-filed with the Pennsylvania Human Relation Commission ("PHRC"), alleging sex and disability discrimination. On November 2, 2015, the EEOC issued a Notice-of-Rights-to-Sue.

On January 18, 2016, Fellows commenced this action by filing a Praecipe for Writ of Summons in the Court of Common Pleas of Allegheny County. Fellows thereafter filed a four-

count complaint in the Court of Common Pleas of Allegheny County on May 2, 2016, alleging claims under Title IX, the Americans with Disabilities Act ("ADA"), Title VII, and the Pittsburgh City Code. CSD timely removed the action to this Court.

CSD now moves to dismiss the Complaint in its entirety. In the alternative, CSD asks the Court to compel the parties to arbitrate their dispute and stay this action pending resolution of the arbitration.

**II. Standard of Review**

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint, which may be dismissed for the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Upon review of a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States has made clear in *Bell Atlantic Corp. v. Twombly*, such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007).

The Supreme Court later refined this approach in *Ashcroft v. Iqbal*, emphasizing the requirement that a complaint must state a plausible claim for relief in order to survive a motion to dismiss. 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 555). Nevertheless, "the plausibility standard is not akin to a 'probability requirement,'" but requires a plaintiff to show

"more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 555).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must take a three-step approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must "tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Accordingly, the Court must separate the factual and legal elements of the claim and "accept the factual allegations contained in the Complaint as true, but [ ] disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-57; *Burtch*, 662 F.3d at 220-21). The Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citing *Iqbal* 556 U.S. at 678). The determination

for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Rule 12(b)(6) and the requirements of Rule 8 must still be met. *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). The Supreme Court did not abolish the Rule 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 553). Rule 8 also still requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677-78 (citing Fed. R. Civ. P. 8(a)(2)). While this standard "does not require 'detailed factual allegations,' [ ] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 544-55). Simply put, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

### III. Discussion

#### A. Exhaustion of Administrative Remedies

CSD seeks dismissal of Fellows' Title VII and ADA claims, arguing that she did not timely exhaust her administrative remedies. In support, CSD suggests that Fellows was required to file her charge of discrimination with the EEOC within 180 days of her termination and that she failed to do so. This argument is frivolous, to say the least.

6

Under Title VII and the ADA, "before a claimant may bring suit in federal court, she must exhaust her administrative remedies." *Baker v. Office Depot, Inc.*, 115 F. App'x 574, 576 (3d Cir. 2004) (citing *Robinson v. Dalton*, 107 F.3d 1018, 1020-21 (3d Cir. 1997)). "The administrative remedy at issue here is the timely filing of a complaint with the EEOC." *Id.*

"[A] claimant in a deferral state, such as Pennsylvania, must first file a complaint with the EEOC within 300 days of the alleged unlawful employment practice."[1] *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) (citing 42 U.S.C. § 2000e–5(e)(1)); *see also* 42 U.S.C. § 12117(a) (incorporating the powers, remedies, and procedures of Title VII into the ADA). "[O]therwise, the applicable period is 180 days." *Hodges v. UPMC Presbyterian Shadyside Hosp.*, No. 2:05-CV-1310, 2007 WL 654319, at *1 (W.D. Pa. Feb. 27, 2007) (citing 42 U.S.C. § 2000e-5(e)). CDS conveniently ignores this statutory exception.[2]

Be that as it may, Fellows timely filed her Charge of Discrimination with the EEOC less than 300 days after her termination. To illustrate: her Charge of Discrimination is dated

---

1. The enforcement provisions of Title VII and the ADA both provide, in relevant part, as follows:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge . . . shall be served upon the person against whom such charge is made within ten days thereafter, **except** that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved **within three hundred days** after the alleged unlawful employment practice occurred

42 U.S.C. § 2000e-5(e)(1) (emphasis added); *see also* 42 U.S.C. § 12117(a) (incorporating the powers, remedies, and procedures of Title VII into the ADA).

2. CSD also disregards a relevant (and dispositive) passage from the sole case it cites for its novel position. *See* Def.'s Br. at 8 (citing *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001)). As CSD indicates, *Burgh* states that "a charge of [unlawful] discrimination in employment must be filed with the EEOC within 180 days." *Id.* But CSD fails to discuss, let alone mention, what *Burgh* states just two sentences later: "If the complainant also initiates a complaint with a parallel state agency, as occurred in the instant case, **the period for filing the charge with the EEOC is extended to 300 days from the date of the alleged unlawful employment practice**." *Id.* at 470 (citing 42 U.S.C. § 2000e–5(e)(1)) (emphasis added). Worse yet, CSD fails to correct its apparent missteps in its reply brief, even after Fellows highlights this glaring error in her response.

7

November 4, 2014 – 245 days after her March 4, 2014 termination or, in other words, 55 days before the 300-day limitations period time-barred her claim. At the top of the Charge, Fellows indicates that she cross-filed with the PHRC – the relevant state agency in Pennsylvania. CSD's position regarding the limitations period is thus without merit, and its motion to dismiss on that basis will be denied.

### B. Fair Pay and Safe Workplaces Executive Order

CSD also moves the Court to enforce the Arbitration Agreement and compel Fellows to arbitrate this dispute under the terms of their agreement. In doing so, CSD requests that the Court dismiss the Complaint with prejudice or, in the alternative, stay this action in accordance the Federal Arbitration Act ("FAA").

Fellows opposes dismissal of this action. She argues that CSD cannot seek enforcement of the Arbitration Agreement as to her Title IX, Title VII, and Pittsburgh City Code gender discrimination claims because, as a federal contractor, it is subject to the Fair Pay and Safe Workplaces Executive Order, which bans pre-dispute arbitration agreements. Fellows does not, however, dispute that the Arbitration Agreement is otherwise enforceable.

President Obama signed the Fair Pay and Safe Workplaces Executive Order on July 31 2014, nearly nine months after Fellows signed the Arbitration Agreement and Acknowledgment and three months after her termination. Exec. Order No. 13673, 79 FR 45309. It provides, in relevant part, as follows:

> Agencies shall ensure that for all contracts where the estimated value of the supplies acquired and services required exceeds $1 million, provisions in solicitations and clauses in contracts shall provide that contractors agree that the decision to arbitrate claims arising under title VII of the Civil Rights Act of 1964 or any tort related to or arising out of sexual assault or harassment may only be made with the voluntary consent of employees or independent contractors after such disputes arise.

*Id.*, Sec. 6(a). The Executive Order does not, of course, purport to suspend the FAA.

Section 2 of the FAA provides that [a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. § 2. The FAA, moreover, permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. "This provision establishes 'a liberal federal policy favoring arbitration agreements.'" *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665 (2012) (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). "The final phrase of § 2, however, permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* (quoting 9 U.S.C. § 2). "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* (quoting *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

Accordingly, when deciding a motion to compel arbitration, the court must address two issues: (1) whether the parties have entered into a valid written agreement to arbitrate, and (2)

whether the dispute in question falls within the scope of that agreement. *Century Indemnity Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009); *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (citing *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005)). Once the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Meanwhile, the court, upon request of one of the parties, must stay the case pending resolution of the arbitration. *Lloyd v. Hovensa, LLC.*, 369 F.3d 263, 269 (3d Cir. 2004) (citing 9 U.S.C. § 3).

In this case, Fellows is attempting to invalidate the written agreement to arbitrate based on the Executive Order. For its part, CSD contends that, by the Executive Order's own terms, it has yet to come into effect. The Court agrees.

Section 7 directs the Federal Acquisition Regulation ("FAR") Council to "propose such rules and regulations and issue such orders as are deemed necessary and appropriate to carry out this order, including sections 5 and 6" and to "issue final regulations in a timely fashion after considering all public comments, as appropriate." *Id.* Section 10 states that the Executive Order "**shall apply to all solicitations for contracts as set forth in any final rule issued by the FAR Council under sections 4(a) and 7 of this order**." *Id.* (emphasis added). In other words, the requirements will not apply to contractors until any final rule is published.

At this time, it appears that the FAR Council has yet to issue any final rules. In fact, the June 9, 2016 Semiannual Regulatory Agenda still lists its implementing regulations as "pending." Semiannual Regulatory Agenda, 81 FR 37400-01. As such, the Executive Order does not invalidate the otherwise enforceable Arbitration Agreement between the parties.

## IV. Conclusion

Under the FAA, 9 U.S.C. § 3, a court shall enter a stay pending arbitration when issues brought before it are subject to a written arbitration clause. *See* 9 U.S.C. § 3. The Court of Appeals for the Third Circuit has held that the "plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration." *Lloyd v. HOVENSA, LLC.*, 369 F.3d 263, 269 (3d Cir. 2004). The parties have done so in this case (although they couch it as the alternative relief sought). *See* Def.'s Br. at 10; Pl.'s Resp. at 6-7. Accordingly, the Court will grant the motion in part and stay this action pending arbitration.

An appropriate Order follows.

McVerry, S.J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA J. FELLOWS,<br>   Plaintiff,<br><br>   v.<br><br>CAREER SYSTEMS DEVELOPMENT<br>CORPORATION d/b/a PITTSBURGH JOB<br>CORPS,<br>   Defendant. | ) <br> ) <br> ) <br> )   2:16-cv-00718-TFM <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## ORDER OF COURT

AND NOW, this 27th day of July, 2016, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (ECF No. 6) filed by Career Systems Development Corporation d/b/a Pittsburgh Job Corps. Center ("CSD") is **GRANTED IN PART** to the extent that it seeks to compel arbitration, and the parties shall proceed to arbitration in accordance with the terms of their written agreement. **IT IS FURTHER ORDERED** that this action is **STAYED** pending the completion of arbitration. **IT IS FURTHER ORDERED** that the parties shall advise the Court of the outcome of the arbitration proceeding immediately upon its conclusion.

                  BY THE COURT:

                  <u>s/Terrence F. McVerry</u>
                  Senior United States District Judge

cc:  All counsel of record

   (via CM/ECF)